IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

| | |
|---|---|
| REPWIRE LLC, <br><br> Plaintiff, <br><br> JIN TIONG ELECTRICAL MATERIALS MANUFACTURER PTE, LTD, <br><br> Consolidated Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> SOUTHWIRE COMPANY, <br><br> Defendant-Intervenor, <br><br> and <br><br> ENCORE WIRE CORP., <br><br> Defendant-Intervenor. | Consol. Court No. 22-00016 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S AND CONSOLIDATED PLAINTIFFS' MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

SPENCER NEFF
Attorney
Office of the Chief Counsel
For Trade Enforcement & Compliance
U.S. Department of Commerce

ERIC J. SINGLEY
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
eric.j.singley@usdoj.gov

September 28, 2022

**TABLE OF CONTENTS**

**PAGE**

STATEMENT PURSUANT TO RULE 56.2 ................................................................................2

    I.    Administrative Determination Under Review .......................................................2

    II.    Issue Presented For Review ...................................................................................2

STATEMENT OF FACTS ...............................................................................................................2

SUMMARY OF THE ARGUMENT ................................................................................................3

ARGUMENT ....................................................................................................................................4

    I.    Standard of Review ................................................................................................4

    II.    Commerce Lawfully Found That Jin Tiong Failed To Demonstrate Its Eligibility For A Separate Rate ..................................................................................................5

CONCLUSION .................................................................................................................................9

## **TABLE OF AUTHORITIES**

**CASES**  **PAGE(S)**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
   596 F.3d 1365 (Fed. Circ. 2010)..................................................................................5

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ....................................................................................4

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938)......................................................................................................4

*Huvis Corp. v. United States*,
   570 F.3d. 1347 (Fed. Cir. 2009) ...................................................................................5

*Hyundai Steel Co. v. United States*,
   319 F. Supp. 3d 1327 (Ct. Int'l Trade 2018)................................................................9

*INS v. Elias-Zacarias*,
   502 U.S. 478 (1992)......................................................................................................5

*Mid Continent Steel & Wire, Inc. v. United States*,
   203 F. Supp. 3d 1295 (Ct. Int'l Trade 2017)................................................................5

*Nucor Corp. v. United States*,
   612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009)................................................................5

*Prime Time Commerce LLC v. United States*,
   396 F. Supp. 3d 1319 (Ct. Int'l Trade 2019)................................................................9

*Shandong Huarong Mach. Co. v. United States*,
   435 F. Supp. 2d 1261 (Ct. Int'l Trade 2006)................................................................8

*Shandong Yongtai Grp. Co. v. United States*,
   415 F. Supp. 3d 1303 (Ct. Int'l Trade 2019)................................................................6

*Sigma Corp. v. United States*,
   117 F.3d 1401 (Fed. Cir. 1997) ....................................................................................5

*Suntec Indus. Co. v. United States*,
   951 F.Supp. 2d 1341(Ct. Int'l Trade 2013)..................................................................6

*Tianjin Mach. Import & Export Corp. v. United States*,
   806 F. Supp. 1008 (Ct. Int'l Trade 1992).....................................................................5

*Transcom, Inc. v. United States*,
  294 F.3d 1371 (Fed. Cir. 2002) ..................................................................................6

*United States Steel Corp. v. United States*,
  348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018) ............................................................5, 7

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ...........................................................................................4

19 U.S.C. § 1677e(a) .........................................................................................................9

19 U.S.C. § 1677m(i) .........................................................................................................9

44 U.S.C. § 1507 ................................................................................................................6

**ADMINISTRATIVE DETERMINATIONS**

*Crystalline Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China*,
  80 Fed. Reg. 40,998 (Dep't of Commerce Jul. 14, 2015) ..........................................8

*Cast Iron Soil Pipe from the People's Republic of China*,
  83 Fed. Reg 44,567 (Dep't of Commerce Aug. 31, 2018) ........................................7

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
  86 Fed. Reg. 8,166 (Dep't of Commerce Feb. 4, 2021) ............................................2

*Aluminum Wire and Cable From the People's Republic of China*,
  86 Fed. Reg. 49,306 (Dep't of Commerce Sep. 2, 2021) ..........................................3

*Hydrofluorocarbon Blends from the People's Republic of China*,
  86 Fed. Reg. 49,516, 49,517 (Sep. 3, 2021) ..............................................................8

*Aluminum Wire and Cable from the People's Republic of China*,
  86 Fed. Reg. 73,251 (Dep't of Commerce Dec. 27, 2021) ........................................2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES**

| | |
|---|---|
| REPWIRE LLC, | ) |
|                  Plaintiff, | ) |
| JIN TIONG ELECTRICAL MATERIALS MANUFACTURER PTE, LTD, | ) |
|                  Consolidated Plaintiff, | ) |
|       v. | ) Consol. Court No. 22-00016 |
| UNITED STATES, | ) |
|                  Defendant, | ) |
| SOUTHWIRE COMPANY, | ) |
|                  Defendant-Intervenor, | ) |
|      and | ) |
| ENCORE WIRE CORP., | ) |
|                  Defendant-Intervenor. | ) |

**ORDER**

Upon consideration of plaintiff's and consolidated plaintiff's motion for judgment upon the agency record, responses thereto, replies, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's and consolidated plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained in its entirety.

Dated: _____, 2022            _____
       New York, New York                                                                         Judge

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

| | |
|---|---|
| REPWIRE LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| JIN TIONG ELECTRICAL MATERIALS MANUFACTURER PTE, LTD, | )<br>)<br>) |
| Consolidated Plaintiff, | )<br>)<br>) |
| v. | )   Consol. Court No. 22-00016 |
| UNITED STATES, | )<br>)<br>) |
| Defendant, | )<br>) |
| SOUTHWIRE COMPANY, | )<br>)<br>) |
| Defendant-Intervenor, | )<br>) |
| and | )<br>) |
| ENCORE WIRE CORP., | )<br>)<br>) |
| Defendant-Intervenor. | )<br>) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S AND CONSOLIDATED PLAINTIFFS' MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of this Court's rules, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff, Repwire LLC (Repwire), and by consolidated plaintiffs, Jin Tiong Electrical Materials Manufacturer PTE, Ltd (Jin Tiong). ECF No. 34 (Repwire Br.). Plaintiff and consolidated plaintiffs challenge certain aspects of the Department of Commerce's (Commerce) determination of the final results of review of the antidumping duty order covering aluminum wire and cable from the People's Republic of China (China). As demonstrated below, Commerce's final results

are based upon substantial evidence and otherwise in accordance with law because record evidence shows that Jin Tiong, one of the companies for which this review was requested, failed to timely submit its separate rate application and therefore establish its eligibility for individual examination in this review.

## STATEMENT PURSUANT TO RULE 56.2

### I. Administrative Determination Under Review

The administrative determination under review is *Aluminum Wire and Cable from the People's Republic of China*, 86 Fed. Reg. 73,251 (Dep't of Commerce Dec. 27, 2021) (final results) (*Final Results*), and the accompanying Issues and Decision Memorandum (IDM). The period of review is June 5, 2019, through November 30, 2020.

### II. Issue Presented For Review

Whether Commerce properly found that Jin Tiong, one of the companies for which a review was requested, failed to timely submit a separate rate application and thereby establish its eligibility for individual examination.

## STATEMENT OF FACTS

On February 4, 2021, Commerce initiated a review of the antidumping order covering aluminum wire and cable from China for the period of review covering June 5, 2019, through November 30, 2020. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 8,166 (Dep't of Commerce Feb. 4, 2021) (*Initiation Notice*). Commerce initiated a review of two companies, one of which was Jin Tiong. *Id.* at 8,167. In its initiation notice, Commerce required that all firms for which a review has been initiated that wished to seek a separate rate must complete and submit a separate rate application or certification no later than 30 days from the publication of Commerce's initiation notice. *Id.* Jin Tiong did not file a

separate rate application by the deadline established in the *Initiation Notice*. Rescission of Questionnaire, P.R. 21 at 1.

On July 15, 2021, Commerce inadvertently issued a questionnaire to Jin Tiong. *Id*. On July 28, 2021, Commerce rescinded this questionnaire, explaining that the questionnaire was erroneously issued to Jin Tiong because Jin Tiong failed to timely establish its eligibility for a separate rate. *Id*. at 1-2. Even though Commerce rescinded its questionnaire, Jin Tiong nonetheless submitted an unsolicited section A questionnaire response. Rejection of Jin Tiong's Section A Response, P.R. 29. Commerce rejected this response because it was unsolicited. *Id*. In its preliminary results, Commerce explained that because Jin Tiong failed to timely submit a separate rate application, it was not eligible for examination in Commerce's administrative review. *Aluminum Wire and Cable From the People's Republic of China*, 86 Fed. Reg. 49,306 (Dep't of Commerce Sep. 2, 2021) (preliminary results). In its final results, Commerce continued to find that Jin Tiong was not eligible for examination. *Final Results*, 86 Fed. Reg. at 73,251; IDM at 7.

## SUMMARY OF THE ARGUMENT

Commerce's *Initiation Notice* provided Jin Tiong with adequate notice of the requirement that all parties seeking to establish a separate rate in the administrative review must submit a separate rate application by the deadline therein. Jin Tiong failed to submit a separate rate application by that deadline, and therefore, Commerce properly found that Jin Tiong had failed to rebut the presumption of government control—a rebuttable presumption that applies to all companies within non-market economy countries—and was therefore not eligible for individual examination in the review. Repwire and Jin Tiong argue that the erroneous issuance of a questionnaire by Commerce absolves it of that requirement. Repwire and Jin Tiong's argument,

3

however, contravenes the plain language of the *Initiation Notice*, ignores Commerce's explanation of its rescission of the questionnaire, and is based on language that is not on the record of the present case and would otherwise have no bearing on the deadline established in Commerce's *Initiation Notice*.

Repwire and Jin Tiong also argue that Commerce acted arbitrarily and capriciously by declining to individually examine Jin Tiong. Commerce's treatment of Jin Tiong in this review, however, is consistent with the standard articulated by Commerce's *Initiation Notice* in this case and in prior administrative proceedings.

Finally, Repwire and Jin Tiong argue that Commerce improperly applied an adverse factual inference to Jin Tiong by declining to consider Jin Tiong's unsolicited questionnaire response. This argument is unavailing because Commerce did not individually examine Jin Tiong in the review. Further, Repwire and Jin Tiong ignore that Jin Tiong's questionnaire response to Commerce was unsolicited and therefore properly removed from the record.

## ARGUMENT

### I. Standard of Review

The Court upholds Commerce's determination if it is supported by "substantial evidence on the record" and otherwise "in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to support the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (footnote and internal quotation marks omitted). When Congress has entrusted

4

an agency to administer a statute that demands inherently fact intensive inquiries, such as in this case, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

To comply with the statutory requirement that Commerce's determinations be made "in accordance with law," Commerce must "follow its established practice or explain why it is reasonable for it to deviate from its practice." *United States Steel Corp. v. United States*, 348 F. Supp. 3d 1248, 1260 (Ct. Int'l Trade 2018). Commerce's actions establish a practice "'when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to' the agency's past action." *Id.* at 1254 (quoting *Mid Continent Steel & Wire, Inc. v. United States*, 203 F. Supp. 3d 1295, 1312 (Ct. Int'l Trade 2017)). Commerce is permitted to change its practice when "the new policy is permissible under the statute, … there are good reasons for it, and … the agency *believes* it to be better, which the conscious change of course indicates." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 596 F.3d 1365, 1372 (Fed. Circ. 2010) (quoting *Huvis Corp. v. United States*, 570 F.3d. 1347, 1353 (Fed. Cir. 2009)).

**II.     Commerce Lawfully Found That Jin Tiong Failed To Demonstrate Its Eligibility For A Separate Rate**

In antidumping duty proceedings before Commerce, producers in non-market economies, such as China, must "'affirmatively demonstrate' entitlement to a separate, company-specific margin by showing 'an absence of central government control, both in law and in fact, with respect to exports.'" *See Sigma Corp. v. United States*, 117 F.3d 1401, 1495 (Fed. Cir. 1997) (citing *Tianjin Mach. Import & Export Corp. v. United States*, 806 F. Supp. 1008, 1013-14 (Ct.

5

Int'l Trade 1992)). A company that fails to demonstrate its independence from the government-wide entity in a non-market economy is not eligible for an individual rate and is subject to a "countrywide rate." *See Transcom, Inc. v. United States*, 294 F.3d 1371, 1373 (Fed. Cir. 2002).

Under 44 U.S.C. § 1507, publication of a document in the Federal Register is sufficient to give notice of its contents to parties affected by it. *See* IDM at 5; *see also Shandong Yongtai Grp. Co. v. United States*, 415 F. Supp. 3d 1303, 1309 (Ct. Int'l Trade 2019); *Suntec Indus. Co. v. United States*, 951 F.Supp. 2d 1341(Ct. Int'l Trade 2013). In its *Initiation Notice,* Commerce notified all parties for which a review was requested that all parties seeking to establish independence from government control and therefore eligibility for a separate rate must apply for a separate rate, and that the deadline for submissions of separate rate applications was 30 days after the date of publication of the *Initiation Notice*. *See* IDM at 5. Jin Tiong failed to submit a separate rate application by that deadline. *Id.*; *see also* P.R. 21 at 1. As Commerce explained in its decision memorandum, "those companies that attempt to demonstrate that they operate free of government control are eligible for a separate rate." IDM at 5. By failing to submit a separate rate application, Jin Tiong did not attempt to establish its eligibility for a separate rate; therefore, Commerce should not have proceeded to "other aspects of a review that are only warranted for a company entitled to individual examination," including the issuance of a section A questionnaire. *Id.*

Repwire and Jin Tiong argue that the language of the questionnaire erroneously issued by Commerce absolves Jin Tiong's failure to timely file its separate rate application. Repwire Br. at 5-7. In support of their argument, Repwire and Jin Tiong cite specific language contained in a questionnaire that is not on the record of this proceeding because it was rescinded by Commerce. *See* P.R. 21. But even if the questionnaire cited by Repwire and Jin Tiong were on the record,

the language plaintiffs attempt to rely upon cannot be read to invalidate a requirement that was provided in the *Initiation Notice*, and of which Jin Tiong had notice of at least two months before the questionnaire was inadvertently issued. A questionnaire that was issued accidently and that was rescinded shortly thereafter cannot have invalidated a requirement for an affirmative filing by Jin Tiong that was identified in the *Initiation Notice* that was published several months prior.

Repwire and Jin Tiong next argue that in the past Commerce has individually examined parties notwithstanding their failure to timely submit separate rate applications. Repwire Br. at 7. Repwire and Jin Tiong cite to Commerce's preliminary findings in the antidumping investigation of *Cast Iron Soil Pipe* from China. *See Cast Iron Soil Pipe from the People's Republic of China*, 83 Fed. Reg 44,567 (Dep't of Commerce Aug. 31, 2018) (preliminary determination) (*Cast Iron Soil Pipe*). But *Cast Iron Soil Pipe* is distinguishable from the present case. In *Cast Iron Soil Pipe*, Commerce (albeit mistakenly) stated that it *had* received a timely separate rate application from the mandatory respondent, Heng Tong. *See Cast Iron Soil Pipe* at n.54 (listing Heng Tong as a separate rate applicant); *but see* Comments on Withdrawal of Questionnaire, P.R. 25 at Exhibit A (showing an absence of a separate rate application filed by Heng Tong in Commerce's internal record system).

Repwire and Jin Tiong argue that the findings in *Cast Iron Soil Pipe* are relevant to this case because Heng Tong did not actually submit a separate rate application, but whether parties that fail to submit a timely separate rate application can be deemed ineligible for individual examination was never addressed in *Cast Iron Soil Pipe*. In any event, a proceeding separate and distinct from the present review does not, by itself, establish an agency practice that is binding on Commerce, particularly when the cited decision does not discuss the alleged agency practice. *See United States Steel Corp. v. United States*, 348 F. Supp. 3d 1248, 1254 (Ct. Int'l Trade

7

2018) ("Commerce's actions establish a practice when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to the agency's past action." ) (internal quotations omitted); *see also Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261 n. 23 (Ct. Int'l Trade 2006) (finding that "two prior determinations are not enough to constitute an agency practice that is binding on Commerce"). Moreover, the *Initiation Notice* provided Jin Tiong with notice of the requirement to submit a separate rate application no later than 30 days from the date of the notice.

      Importantly, there is no dispute that Jin Tiong did not, timely or otherwise, file a separate rate application in this proceeding. *See* Repwire Br. at 9; IDM at 4. In cases when this issue has been squarely before Commerce, Commerce has found that parties that fail to timely submit separate rate information pursuant to the deadline established in Commerce's *Initiation Notice* are not eligible for individual examination. *Id.* (citing *Crystalline Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China*, 80 Fed. Reg. 40,998 (Dep't of Commerce Jul. 14, 2015) and accompanying Issues and Decision Memorandum at 11-13 (*CSPV Cells*); *Hydrofluorocarbon Blends from the People's Republic of China*, 86 Fed. Reg. 49,516, 49,517 (Sep. 3, 2021) (*HFC Blends*)). In *CSPV Cells*, Commerce denied a Chinese producer a separate rate when it failed to timely meet the requirements of the *Initiation Notice* with regard to filing its separate rate information. *CSPV Cells* at 11-13. More recently, in *HFC Blends*, Commerce found that the sole company subject to review failed to timely submit a separate rate application pursuant to the deadline set in the *Initiation Notice* and therefore failed to establish its eligibility for separate rate status. *HFC Blends* at 49,517. Therefore, in cases when the issue has been raised, Commerce has articulated a standard practice by which parties must timely submit separate rate information in order to establish eligibility for a separate rate and has

applied that standard appropriately.

Repwire and Jin Tiong further argue that Commerce could have made a determination with respect to Jin Tiong's separate rate status based on Jin Tiong's questionnaire response. Repwire Br. at 11. This argument is flawed, however, because Jin Tiong's questionnaire response was unsolicited and removed from the record of Commerce's review, and Jin Tiong did not submit the required application by the specified deadline. P.R. 29; *see also Prime Time Commerce LLC v. United States*, 396 F. Supp. 3d 1319, 1326-1327 (Ct. Int'l Trade 2019) ("Commerce, however, is not required to retain on the record copies of untimely filed documents or unsolicited questionnaire responses.").

Finally, Repwire and Jin Tiong argue that Commerce should not have applied to Jin Tiong "AFA," or used an adverse factual inference when selecting from among facts available to gap-fill information not on the record,.[1] Repwire Br. at 11. But this argument mischaracterizes Commerce's findings in the review. Commerce did not apply an adverse factual inference to Jin Tiong. *See generally* IDM. Instead, Commerce simply did not find Jin Tiong to be eligible for individual examination, and it applied a rebuttable presumption that applies to all companies within non-market economy countries. IDM at 7.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's final results

---

[1] "When 'necessary information is not available on the record,' or an interested party 'withholds information requested by Commerce,' 'fails to provide' requested information by the submission deadlines, 'significantly impedes a proceeding,' or provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i), Commerce 'shall . . . use the facts otherwise available.' 19 U.S.C. § 1677e(a). Additionally, if Commerce determines that the party 'has failed to cooperate by not acting to the best of its ability to comply with a request for information,' it 'may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available.' Id. § 1677e(b)." *Hyundai Steel Co. v. United States*, 319 F. Supp. 3d 1327 (Ct. Int'l Trade 2018).

9

of review in its entirety and deny plaintiff's and consolidated plaintiff's motion for judgment on the agency record.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. MCCARTHY<br>Director |
|  | s/ Reginald T. Blades, Jr.<br>REGINALD T. BLADES, JR.<br>Assistant Director |
| OF COUNSEL:<br><br>SPENCER NEFF<br>Attorney<br>Office of the Chief Counsel<br>    For Trade Enforcement & Compliance<br>U.S. Department of Commerce | /s/ Eric J. Singley<br>ERIC J. SINGLEY<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>eric.j.singley@usdoj.gov |

September 28, 2022

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the brief was prepared, the public version of the brief contains a total of 2657 words.

s/ Eric J. Singley

September 28, 2022