UNITED STATES COURT OF INTERNATIONAL TRADE
Before the Hon. Jennifer Choe-Groves, Judge

| | |
|---|---|
| Repwire LLC,<br><br>*Plaintiff,*<br><br>Jin Tiong Electrical Materials Manufacturer PTE, Ltd,<br><br>*Consolidated Plaintiff,*<br><br>v.<br><br>United States,<br><br>*Defendant,*<br><br>Southwire Company,<br><br>*Defendant-Intervenor,*<br><br>and<br><br>Encore Wire Corp.,<br><br>*Defendant-Intervenor.* | Cons. Ct. No. 22-00016 |

**REPLY OF PLAINTIFF AND CONSOLIDATED PLAINTIFF
TO RESPONSES OF DEFENDANT AND DEFENDANT INTERVENOR**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
Counsel for Plaintiffs

Dated: November 2, 2022

Table of Contents

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................. 1

    A. Introduction ................................................................................. 1

    B. Summary of Argument ............................................................... 1

II. ARGUMENT ................................................................................................ 2

    A. The Statute does not Unambiguously Require the Filing of an SRA or an SRC ................................................................................. 2

        1. The Questionnaire Expressly Contemplates the submission of a Response Without the filing of an SRA or SRC ........................................................................................ 2

        2. The Department had no Discretion in Selecting Mandatory Respondents ................................................................................ 4

    B. The Defendants Ignore Key Facts in the Hengtong Casting Matter .......... 6

III. CONCLUSION ............................................................................................ 7

Table of Authorities

*Cases*

*Carpenter Technology Corporation v. United States,* 662 F.Supp.2d 1337 (Ct. Int'l Trade 2009)..................................................................................5

*Dongbu Steel Co., Ltd. v. U.S.*, 635 F.3d 1363 (Fed. Cir 2011)................. 6, 7

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,* 260 F.3d 1365, 1379-80 (Fed.Cir. 2001)..............................................................7

*Zhejiang Native Produce and Animal By-Products Import and Export Corp. v. United States,* 637 F.Supp.2d 1260 (Ct. Int'l Trade 2009) ...........4, 5

*Statutes*

19 U.S.C. § 1677(35)......................................................................................7

19 U.S.C. §1677f-1(c)(1)...............................................................................4

19 U.S.C. §1677f-1(c)(2)...............................................................................4

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

### A.  *Introduction*

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Plaintiff Repwire LLC and Consolidated Plaintiff Jin Tiong Electrical Materials Manufacturer PTE, Ltd ("Plaintiffs") and the Court's scheduling order of October 28, 2022 respectfully submit this reply to the Responses of Defendant United States and Defendant Intervenors Southwire Company and Encore Wire Corporation. (Collectively "Defendants")  As demonstrated below, the arguments submitted by the Defendants are unavailing, and this matter should be remanded to the Department of Commerce with direction that they reopen the record and receive full questionnaire responses from plaintiff Jin Tiong.

### B.  *Summary of Argument*

The issues in this appeal are not complicated.  The Department had a pool of two potential mandatory respondents, and thus, under the law and established Department practice, both entities should have been designated as mandatory respondents.  While Jin Tiong did not submit a Separate Rate Application, Section A of the Department's standard questionnaire issued in non-market economy cases seeks this very information.  The Department properly issued a questionnaire to Jin Tiong, but improperly withdrew this questionnaire before Jin Tiong was able to submit the questionnaire and improperly rejected the filings made by Jin Tiong.

## II.     ARGUMENT:

### A. The Statute does not Unambiguously Require the Filing of an SRA or an SRC

As noted by the Defendant-Intervenor in its response (Response of Defendant-Intervenor, September 30, 2022 at 7) (hereafter "RDI") the statute does not expressly provide for a separate rate process.  Commerce has, therefore, a gap which must be addressed and the Court must determine whether Commerce's actions were sufficiently reasonable.   Plaintiffs submit that such actions were not sufficiently reasonable.

### 1.   The Questionnaire Expressly Contemplates the submission of a Response Without the filing of an SRA or SRC

In its response, defendants argue that a separate rate can only be granted upon the filing of an SRA. (Response of Defendant of September 28, 2022 at 8 (hereafter "RD") and RDI at 11.)   This, however, is directly contradicted by the language in Section A.  Specifically, the questionnaire contemplated three and distinct scenarios, only two of which contemplate the filing of an SRA or SRC[1]:

1. A party may rely upon its Separate Rate Application.
2. A party may withdraw the Separate Rate Application and respond fully to section A; and
3. **A party must answer Section A if no Separate Rate Application was filed.**

---

[1] This would be reflected in PR-19 if the Department had not removed such document from the record.  As this document was not untimely filed, the Department could not properly reject this document and remove it from the record.

2

Establishing a requirement that a party submit an SRA in order to have a questionnaire issued to it, essentially renders the third criteria a nullity. Furthermore, other express language in the questionnaire also contemplate the filing of a questionnaire response without the filing of an SRA.

The questionnaire stated:

> Note: The Department presumes that a single weighted-average dumping margin is appropriate for all exporters in a non-market economy country. The Department may, however, consider requests for separate rates from individual exporters. **Individual exporters requesting a separate rate must respond to the following questions in order for the Department to consider fully the issue of separate rates**.[2]  (Emphasis Added)

This language does not refer to an SRA or an SRC, but rather unequivocally directed individual exporters to respond to "the following questions in order for the Department to consider fully the issue of separate rates".

Defendants also cite to multiple cases where the Department refused to grant a separate rate because of a failure of the respondents to file an SRC or SRA. This is not relevant. Plaintiffs readily acknowledge that if they were not necessarily to be selected as a mandatory respondent, that the absence of an SRC or SRA would be fatal to the granting of separate rate status. That is not, however, the fact pattern in this matter. In this case, as detailed in (b) below, the Department should have

---

[2] This would be reflected in PR-19 if the Department had not removed such document from the record. See fn 1.

selected Jin Tiong as a mandatory respondent and it should have been able to obtain a separate rate under the response to Section A.

As such, when considering whether Commerce's actions were "sufficiently reasonable", the language of the questionnaire, which is issued in every non-market economy case, renders the Department's reliance solely on the SRA/SRC process unreasonable.

> 2. *The Department had no Discretion in Selecting Mandatory Respondents*

A second factor which demonstrates the unreasonableness of the Department practice, and the reasonableness of plaintiffs' actions is the established process for selecting mandatory respondents. Under the statute, the general rule is that "the administering authority shall determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. §1677f-1(c)(1). The Department is only allowed to "limit" the number of respondents "If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or producers involved in the investigation or review…" 19 U.S.C. §1677f-1(c)(2)

In other words, if the pool of potential respondents is not "large", the Department cannot limit respondents. As noted in *Zhejiang Native Produce and Animal By-Products Import and Export Corp. v. United States,* 637 F.Supp.2d 1260 (Ct. Int'l Trade 2009):

> By contrast, the number of exporters and producers initially involved in this review, four, does not appear to satisfy the requirement that the number be "large" under any ordinary understanding of that word. In any event, not even four exporters or producers were involved here because the two mandatory respondents withdrew from the review. *Zhejiang* at 1264.

This decision was further cited as authority in *Carpenter Technology:*

> As *Zhejiang* makes clear, Commerce is not free to invoke this exception unless faced with the prospect of examining individually a "large number" of exporters and producers, however that term may be defined.
> *Carpenter Technology Corporation v. United States,* 662 F.Supp.2d 1337 (Ct. Int'l Trade 2009)

In this matter, the total pool of respondents was **two** and never larger than two. Two, which is fewer than 4, is not a "large" number of potential respondents. As such, at the time of initiation of this review, it was clear that both of the potential respondents would be required, by statute, to be selected as a mandatory respondents and would be required to answer the full questionnaire. Critically, this would include Section A of the Department's questionnaire which, by its own words, contains the information necessary to establish that the company being reviewed is separate from the Government of China.

Accordingly, based on the statute, it was reasonable for a company to wait for the issuance of the questionnaire and to ignore the submission of information which would not be used in any analysis by the Department.

5

### *B. The Defendants Ignore Key Facts in the Hengtong Casting Matter*

Both defendant and defendant-intervenor both ignore key facts in arguing that the Court should dismiss the Department's determination in *Cast Iron Soil Pipe from the People's Republic of China.* Defendants focus on an admittedly factually incorrect statement in the preliminary results that Hengtong had submitted an SRA. Defendants admit that no SRA had been submitted. (RD at 7, RDI at 15.) The defendants' analysis, however, ignores the fact that multiple respondents asked the Department to select mandatory respondents from the pool of companies that had submitted Separate Rate Applications and expressly noted that Hengtong had not filed an SRA. (Comments on Withdrawal of Questionnaire at Exhibit B (PR 25)). In other word, at the time of the selection of mandatory respondents, the Department had clear and unequivocal evidence that Hengtong had not submitted an SRA/SRC. The Department selected mandatory respondents and selected Hengtong Castings as a mandatory respondent notwithstanding its failure to participate in the SRA process. (PR 25). It is critical to note that in making this respondent selection process, CBP only considered the quantity and value of the imports and did not consider whether or not the companies filed Separate Rate Applications.

As discussed in plaintiffs' 56.2 motion, the decision in *Dongbu Steel v. US*, 635 F.3d 1363 (Fed. Cir) is directly on point. The Court stated:

> We have indicated that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations

6

> differently. *See, e.g., Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,* 260 F.3d 1365, 1379-80 (Fed.Cir. 2001) (remanding an agency determination to allow the agency to provide a reasonable explanation for its decision to interpret virtually identical statutory language in related statutes inconsistently). Our prior decision in *SKF I* is particularly on point. In *SKF I,* this court held that Commerce's interpretation of the term "foreign like product" in two different ways within the same antidumping proceeding without explanation conflicted with rules of statutory construction. 263 F.3d at 1382. We concluded, "Commerce is required to explain why it uses two different definitions [of the same term], and that explanation must be reasonable." *Id.* This case is even more straightforward than *SKF I* and *National Organization of Veterans' Advocates* because here Commerce is construing *the exact same statutory provision* and concluding that it can be interpreted to have different meanings depending on the type of antidumping proceeding when it has previously argued the opposite. Although 19 U.S.C. § 1677(35) is ambiguous with respect to zeroing and Commerce plays an important role in resolving this gap in the statute, Commerce's discretion is not absolute. Commerce must provide an explanation for why the statutory language supports its inconsistent interpretation.
> *Dongbu Steel* at 1372.

In this case, Commerce's explanation, which is to essentially deny the facts, is insufficient to support its inconsistent interpretation.

### III.   CONCLUSION

In conclusion, the arguments presented by defendants are not availing. Jin Tiong, under the express language of the questionnaire and Department precedent, was not required to submit an SRA/SRC in order to establish its eligibility for a separate rate. Rather, as there were only two potential respondents, Jin Tiong should have been selected as a mandatory respondent and allowed to submit a full

questionnaire response. The Department's issuance of a full questionnaire was, in fact, proper and the Department should not have rescinded such questionnaire and rejected filings made by Jin Tiong pursuant to such questionnaire. Accordingly, the Court should remand this matter to the Department and direct the Department to allow Jin Tiong to submit a questionnaire response.

Respectfully submitted,

/s/ David Craven
David Craven

Counsel to Repwire LLC and Jin Tiong Electrical Materials Manufacturer PTE, Ltd

Dated: November 2, 2022