Slip Op. 23-40

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| REPWIRE LLC,<br><br>    Plaintiff,<br><br>and<br><br>JIN TIONG ELECTRICAL MATERIALS MANUFACTURER PTE, LTD,<br><br>    Consolidated Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>SOUTHWIRE COMPANY LLC, and ENCORE WIRE CORPORATION,<br><br>    Defendant-Intervenors. | Before: Jennifer Choe-Groves, Judge<br><br>Consol. Court No. 22-00016 |

### OPINION AND ORDER

[Sustaining the final results of the administrative review by the U.S. Department of Commerce in the antidumping duty investigation of aluminum wire and cable from the People's Republic of China.]

Dated: March 20, 2023

David J. Craven, Craven Trade Law LLC, of Chicago, IL, for Plaintiff Repwire LLC and Consolidated Plaintiff Jin Tiong Electrical Materials Manufacturer PTE, Ltd.

Reginald T. Blades, Jr., Assistant Director, and Eric J. Singley, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director. Of Counsel was Spencer Neff, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Sydney H. Mintzer, Mayer Brown LLP, of Washington, D.C., for Defendant-Intervenor Southwire Company, LLC.

Jack A. Levy, James E. Ransdell, IV, and Myles S. Getlan, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenor Encore Wire Corporation.

Choe-Groves, Judge: This action concerns the import of aluminum wire and cable from the People's Republic of China ("China"), subject to the administrative determination by the U.S. Department of Commerce ("Commerce") in Aluminum Wire and Cable from the People's Republic of China ("Final Results"), 86 Fed. Reg. 73,251 (Dep't of Commerce Dec. 27, 2021) (final results of antidumping duty admin. review; 2019–2020); see also Issues and Decision Mem. for the Final Results of Antidumping Duty Administrative Review of Aluminum Wire and Cable from the People's Republic of China ("Final IDM"), ECF No. 24-5.

Before the Court is the Motion for Judgment on the Agency Record Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade and Memorandum of Law in Support of the Rule 56.2 Motion of Plaintiff Repwire

LLC and Consolidated Plaintiff Jin Tiong Electrical Materials Manufacturere [sic] PTE LTD for Judgment Upon the Agency Record, filed by Plaintiff Repwire LLC ("Repwire") and Consolidated Plaintiff Jin Tiong Electrical Materials Manufacturer PTE, Ltd. ("Jin Tiong"), challenging Commerce's <u>Final Results</u>. Pl.'s R. 56.2 Mot. J. Agency R. and Mem. Supp. ("Pl.'s Br."), ECF No. 34. Defendant United States ("Defendant") filed Defendant's Response to Plaintiff's and Consolidated Plaintiffs' [sic] Motion for Judgment Upon the Agency Record. Def.'s Resp. Br. Opp'n Pl.'s R. 56.2 Mot. J. Agency R. ("Def.'s Resp. Br."), ECF No. 37. Defendant-Intervenor Southwire Company, LLC filed Defendant-Intervenor Southwire Company, LLC's Opposition to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record. Def.-Interv.'s Resp. Br. Opp'n Pl.'s R. 56.2 Mot. J. Agency R., ECF No. 38. Repwire and Jin Tiong filed their Reply of Plaintiff and Consolidated Plaintiff to Responses of Defendant and Defendant Intervenor. Pl.'s Reply Br. Supp. R. 56.2 Mot. J. Agency R. ("Pl.'s Reply Br."), ECF No. 42.

    The Court reviews Commerce's determination to reject Jin Tiong's questionnaire response and apply the China-wide entity antidumping duty rate to Jin Tiong. For the reasons discussed below, the Court sustains Commerce's determination.

## BACKGROUND

Commerce initiated an administrative review of the antidumping order Aluminum Wire and Cable from the People's Republic of China on February 4, 2021. Initiation of Antidumping and Countervailing Duty Administrative Reviews ("Initiation Notice"), 86 Fed. Reg. 8166 (Dep't of Commerce Feb. 4, 2021). Commerce initiated a review of two companies, ICF Cable and Jin Tiong, for the period of June 5, 2019 to November 30, 2020. Id. at 8167. Commerce instructed in the Initiation Notice that all firms subject to the review, including ICF Cable and Jin Tiong, that wished to seek a separate rate must complete and submit a separate rate application or certification no later than thirty (30) days from the publication of Commerce's Initiation Notice. Id. Relevant to this case, Jin Tiong did not submit a separate rate application or certification by the 30-day deadline. Memo From USDOC to File Pertaining to Jin Tiong Electrical Materials Manufacturer Recission of Questionnaire (July 28, 2021) ("Jin Tiong Questionnaire Recission Memo") at 1–2, PR 21.

Subsequently, Commerce issued a questionnaire to Jin Tiong on July 15, 2021. Id. at 1. On July 28, 2021, Commerce rescinded Jin Tiong's questionnaire, explaining that Commerce had issued the questionnaire in error. Id. at 1–2.

On July 30, 2021, Jin Tiong objected to Commerce's withdrawal of the questionnaire, and on August 5, 2021, Jin Tiong submitted a Section A

questionnaire response.  Rejection Memo From USDOC to File Pertaining to Jin Tiong Rejection of Jin Tiong's Unsolicited Sec A Response (Aug. 16, 2021) ("Jin Tiong Questionnaire Rejection Memo") at 1, PR 29 (citing Jin Tiong's Letter, "Aluminum Wire and Cable from the People's Republic of China, A-570-095; Objection to Withdrawal of Questionnaire," dated July 30, 2021).  On August 16, 2021, Commerce rejected Jin Tiong's submission, stating that the questionnaire response was unsolicited.  See generally id.

Commerce determined that Jin Tiong was not eligible for examination in the administrative review because Jin Tiong failed to submit a timely separate rate application.  Aluminum Wire and Cable from the People's Republic of China ("Preliminary Results"), 86 Fed. Reg. 49,306 (Dep't of Commerce Sep. 2, 2021) (preliminary results of antidumping duty administrative review; 2019–2020).  Commerce confirmed its determination in the Final Results that Jin Tiong was not eligible for examination.  See Final Results. 86 Fed. Reg. at 73,251.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).  The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Repwire filed a Complaint challenging: (1) Commerce's determination to withdraw the questionnaire and reject Jin Tiong's questionnaire response; and (2) Commerce's assignment of an antidumping duty rate based on adverse facts available. Pl.'s Compl. at 5–6, ECF No. 9.

Commerce is authorized by statute to calculate and impose a dumping margin on imported subject merchandise after determining that it is sold in the United States at less than fair value. 19 U.S.C. § 1673. Commerce determines an estimated weighted average dumping margin for each individually examined exporter and producer and one all-others separate rate for non-examined companies. 19 U.S.C. § 1673d(c)(1)(B). The U.S. Court of Appeals for the Federal Circuit ("CAFC") has upheld Commerce's reliance on this method for determining the estimated all-others separate rate in § 1673d(c)(5) when "determining the separate rate for exporters and producers from nonmarket economies that demonstrate their independence from the government but that are not individually investigated." Changzhou Hawd Flooring Co. v. United States, 848 F.3d 1006, 1011 (Fed. Cir. 2017) (citing Albemarle Corp. & Subsidiaries v. United States, 821 F.3d 1345, 1348 (Fed. Cir. 2016)).

An exporter in a non-market economy must "affirmatively demonstrate" its entitlement to a separate, company-specific margin by showing "an absence of

central government control, both in law and in fact, with respect to exports." Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997) (quoting Tianjin Mach. Imp. & Exp. Corp. v. United States, 16 CIT 931, 935, 806 F. Supp. 1008, 1013–14 (1992)). A company that fails to affirmatively demonstrate its entitlement to a separate rate through the absence of government control is not eligible for an individual rate and is subject to the "country-wide" rate. See Transcom, Inc. v. United States, 294 F.3d 1371 (Fed. Cir. 2002); China Mfrs. All., LLC v. United States, 1 F.4th 1028, 1039 (Fed. Cir. 2021) (holding that Commerce may impose a country-wide rate).

## I. Commerce's Determination to Withdraw the Questionnaire and Reject Jin Tiong's Questionnaire Response

Repwire argues that Commerce's determination to withdraw the questionnaire issued to Jin Tiong and reject Jin Tiong's questionnaire response was unlawful and an abuse of discretion. Pl.'s Br. at 2.

19 C.F.R. § 351.301(c)(1) provides that Commerce may issue questionnaires to any person during a proceeding and Commerce will not consider unsolicited or untimely questionnaire responses. 19 C.F.R. § 351.301(c)(1). "Commerce has discretion both to set deadlines and to enforce those deadlines by rejecting untimely filings." Grobest & I-Mei Indus. (Vietnam) Co. v. United States, 36 CIT 98, 122, 815 F. Supp. 2d 1342, 1365 (2012) (citing NTN Bearing Corp. v. United

States, 74 F.3d 1204, 1206–07 (Fed. Cir. 1995)). Agency decisions on acceptance or rejection of documents submitted for the record are reviewed for abuse of discretion. Id.; see also Maverick Tube Corp. v. United States, 39 CIT __, __, 107 F. Supp. 3d 1318, Court No. 21-00173 Page 8 1331 (2015) ("Strict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation for its decision."). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Consol. Bearings Co. v. United States, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted).

In its Initiation Notice, Commerce instructed that all firms listed (including Jin Tiong, who was identified in the Initiation Notice) that wished to seek a separate rate must complete and submit a separate rate application within 30 days of publication of the Initiation Notice in the Federal Register. Initiation Notice, 86 Fed. Reg. at 8167. Jin Tiong was on notice of the 30-day deadline as an interested party because Jin Tiong was identified in the Initiation Notice published in the Federal Register. See 44 U.S.C. § 1507 (publication in the Federal Register is sufficient to give notice of the contents of the document to a person subject to or affected by it). Pursuant to the Initiation Notice, Jin Tiong's separate rate

application was due 30 days after publication in the Federal Register, but Jin Tiong failed to submit a separate rate application by the 30-day deadline. Jin Tiong does not dispute that it did not file a separate rate application. Pl.'s Br. at 10.

On July 15, 2021, Commerce issued a questionnaire to Jin Tiong. Jin Tiong Questionnaire Recission Memo at 1. Commerce rescinded the questionnaire on July 28, 2021 (approximately two weeks after issuing the questionnaire and before Jin Tiong responded), explaining that the questionnaire had been issued in error. Id. at 1–2. Following recission, Jin Tiong objected on July 30, 2021, and subsequently filed a Section A response on August 5, 2021. Jin Tiong Questionnaire Rejection Memo at 1. Jin Tiong argues that it should have been permitted to retain its questionnaire response on the record because Jin Tiong relied on Commerce's issuance of the erroneous questionnaire. Defendant explains Commerce's mistake, stating that:

> By failing to submit a separate rate application, Jin Tiong did not attempt to establish its eligibility for a separate rate; therefore, Commerce should not have proceeded to "other aspects of a review that are only warranted for a company entitled to individual examination," including the issuance of a section A questionnaire.

Def.'s Resp. Br. at 6. In the Final IDM, Commerce stated that it did not receive a separate rate application from Jin Tiong and was, therefore, without "the submission of the required information necessary to establish whether [Jin Tiong] is independent from the control of the government[.]" Final IDM at 4–5. For this

reason, Commerce continued to determine that Jin Tiong was not eligible for individual examination in this administrative review. Id. at 5.

While Commerce's erroneous issuance and subsequent recission of the questionnaire was unfortunate, the Court recognizes that Commerce admitted its mistake within two weeks and withdrew the questionnaire before Jin Tiong filed a response. The Court concludes that Commerce's recission of the erroneous questionnaire was not an abuse of discretion, particularly when Commerce withdrew the questionnaire prior to Jin Tiong submitting a response.

Repwire also contends that Commerce's determination to reject Jin Tiong's questionnaire response was unlawful and an abuse of discretion, Pl.'s Br. at 2, apparently because Jin Tiong submitted the questionnaire response at Commerce's request (even though Commerce rescinded the questionnaire prior to Jin Tiong's submission of its response). Under 19 C.F.R. § 351.301(c)(1), Commerce has discretion to reject unsolicited filings. Under 19 C.F.R. § 351.302(d), "the Secretary will not consider or retain in the official record of the proceedings . . . unsolicited questionnaire responses[.]" It is apparent to the Court that Commerce considered Jin Tiong's submission to be unsolicited because Commerce rescinded the questionnaire prior to receiving the submission. The Court holds that because Commerce's rescission of the erroneous questionnaire was reasonable, Commerce's subsequent determination that Jin Tiong's submission was unsolicited

was also reasonable, since the questionnaire was rescinded before the response was submitted. The Court concludes, therefore, that Commerce did not abuse its discretion by rejecting Jin Tiong's unsolicited questionnaire response. Consol. Bearings Co., 412 F.3d at 1269.

Because Commerce did not abuse its discretion, the Court sustains Commerce's recission of the questionnaire to Jin Tiong and Commerce's rejection of Jin Tiong's questionnaire response.

### II.   Commerce's Application of the China-wide Entity Rate to Jin Tiong

Repwire argues that in the Final Results, Commerce determined unlawfully that Jin Tiong was not eligible for a separate rate and applied the China-wide entity rate. Pl.'s Br. at 11. Specifically, Repwire argues that Commerce unlawfully rescinded Jin Tiong's questionnaire, then used the absence of a questionnaire response as justification for its determination that Jin Tiong was not entitled to a separate rate. Id. Repwire argues that the "circular reasoning was that since Jin Tiong had not provided such evidence of a separate rate status, it was not entitled to separate rate status, notwithstanding that the [Commerce] Department had rejected, and refused to accept the very information which would have provided evidence of such separate rate status." Id. Repwire complains that "[adverse facts available] applied to Jin Tiong because it did not reply to a questionnaire because the Department withdrew such questionnaire." Id.

Defendant argues, however, that Plaintiffs mischaracterize Commerce's determination and assert that "Commerce did not apply an adverse factual inference to Jin Tiong." Def.'s Resp. Br. at 9. Defendant contends that, "[i]nstead, Commerce simply did not find Jin Tiong to be eligible for individual examination, and it applied a rebuttable presumption that applies to all companies within non-market economy countries." Id. (citing Final IDM at 7). More specifically, Commerce determined that "because Jin Tiong did not timely file [a separate rate application] to attempt to demonstrate its eligibility for a separate rate, the presumption of government control is applicable, and . . . it was not appropriate for Commerce to issue a questionnaire[.]" Final IDM at 7.

The Court observes that Commerce determined in the Preliminary Results that Jin Tiong was subject to the review, that Jin Tiong failed to submit a timely separate rate application, and that, "absent the submission of the required information necessary to establish whether any exporter is independent from the control of the government of the subject [non-market economy], i.e., China, Jin Tong [sic] was not eligible for individual examination in this administrative review." Preliminary Results, 86 Fed. Reg. at 49,307. Commerce determined that the applicable antidumping duty rate was 52.79 percent, the rate established in the final determination of the less-than-fair-value investigation. Id. The Court observes that Commerce confirmed its determination in the Final Results that Jin

Tiong was "not eligible for a separate rate, and, therefore, [is] part of the China-wide entity." Final Results, 86 Fed. Reg. at 73,251.

As discussed earlier, an exporter in a non-market economy must "affirmatively demonstrate" its entitlement to a separate, company-specific margin by showing "an absence of central government control, both in law and in fact, with respect to exports." Sigma Corp., 117 F.3d at 1405. Companies that fail to do so in a non-market economy are not eligible for an individual rate and are subject to the "country-wide" rate. See Transcom, Inc., 294 F.3d at 1382.

Because Jin Tiong failed to file a timely separate rate application or certification within the 30-day deadline of the Initiation Notice that could have potentially demonstrated its independence from Chinese government control in order to be entitled to an individual rate, Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997), the Court concludes that Commerce's determination that Jin Tiong was not eligible for a separate rate was reasonable and supported by substantial evidence. The Court concludes also that Commerce was reasonable in assessing the China-wide entity rate in light of Jin Tiong's failure to demonstrate its independence from government control.

## CONCLUSION

For the foregoing reasons, the Court sustains the Final Results.  Judgment will issue accordingly.

                                                  /s/ Jennifer Choe-Groves
                                                  Jennifer Choe-Groves, Judge

Dated:  March 20, 2023
New York, New York